**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                        Case No. 06-CR-205

**NATHAN SHERROD**
        **Defendant.**

## SENTENCING MEMORANDUM

The government charged defendant Nathan Sherrod with conspiracy to distribute more than 100 grams of heroin. Defendant pleaded guilty to the offense, and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. The PSR recommended an offense level of 27 (base level 30, U.S.S.G. § 2D1.1(c)(5), minus 3 for acceptance of responsibility, § 3E1.1) and a criminal history category of IV, producing an imprisonment range of 100-125 months under the sentence guidelines.

Defendant objected to the drug weight used to compute the base offense level and to the inclusion of 2 criminal history points under U.S.S.G. § 4A1.1(e). At sentencing, the government acquiesced in these objections, producing a revised offense level of 25 and imprisonment range of 84-105 months, which I accepted.[1] Defendant then argued for the mandatory minimum term of 60 months, while the government advocated a sentence towards the upper end of the range. Upon consideration of all of the factors set forth in 18 U.S.C. § 3553(a), I decided to impose a sentence of 78 months. I provide written reasons herein.

---

[1] Even subtracting the 2 criminal history points under § 4A1.1(e), defendant still had 7 points and thus fell into category IV.

## I.  SENTENCING FACTORS

"When sentencing a defendant, a district court must consider all sentencing factors enumerated in 18 U.S.C. § 3553(a)."  United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007).  Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the sentencing guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant.  Id.  In making this determination, I do not presume that the guideline sentence is the correct one or give greater weight to the guidelines than to the other § 3553(a) factors.  See United States v.

2

Schmitt, No. 06-2207, 2007 U.S. App. LEXIS 18662, at *10-14 (7th Cir. Aug. 7, 2007).

## II.  DISCUSSION

**A.    Nature of Offense**

Defendant conspired with others to distribute a substantial amount of heroin in the Racine, Wisconsin area.  The offense was quite serious given the potentially deadly nature of this drug, the fairly large amounts involved (400+ grams), and the length of time over which the crime occurred (2001 to 2006).  Defendant suggested that he was a minor player in the conspiracy, noting that police did not find large amounts of heroin or cash in his house when it was searched.  However, the PSR revealed defendant to be a regular supplier of heroin to a consistent customer base of ten to twelve people daily.[2]  Law enforcement was also able to arrange several controlled buys from him in one and two gram amounts.  Thus, I did not accept that defendant was a bit player in the heroin trade.  I did acknowledge that the offense was not aggravated by violence or weapon possession.

**B.    Character of Defendant**

Defendant was forty-two years old and had a fairly significant record, including convictions for possession with intent to deliver cocaine, burglary and felon in possession of a firearm.  Defendant graduated from high school, but he had no verifiable work history.  He attributed his unemployment to health problems, but the record contained no evidence demonstrating the severity or limiting effects of those problems.

The PSR writer was unable to obtain much information about defendant's childhood, as

---

[2]The government noted that heroin dealers often obtain modest amounts ("fingers" of seven to ten grams) from their suppliers, which they quickly distribute to addicts.  The government also noted that heroin dealers often do not become wealthy from their trade.

3

no one wanted to talk about defendant's father. Defendant had several siblings but did not appear to be close to them. His mother and one brother made positive statements about him, as did his current girlfriend. She stated that she had been dating defendant for ten years, and he was very caring and good with her children. Defendant had two children of his own from a previous relationship, aged eighteen and sixteen, and owed about $70,000 in back child support. He did not seem to have contact with his own children.

Defendant indicated that he suffered from depression, and the PSR related some mental health treatment. During the pendency of this case I noticed some possible mental health issues and ordered a competency evaluation, which reported no significant mental illness. The evaluation did suggest that defendant had a preoccupation with his physical condition and medical treatment, and listed a diagnosis of rule out hypocondriasis. The PSR detailed some physical health problems, but it was not clear how serious those problems really were. The PSR also revealed no significant substance abuse issues.

**C.     Consideration of Guidelines and Purposes of Sentencing**

The guidelines recommended a term of 84-105 months. Given the seriousness of the crime, I agreed that a lengthy term of imprisonment was required to provide just punishment. And, given his record, which included previous drug cases, a substantial term was also needed to protect the public and deter defendant from re-offending. Terms of three and four years, which he had received in the past, did not correct his behavior.

Defendant pressed three reasons for a lower sentence. First, he noted that he had been confined in various county jails for about one year during the pendency of the case, with little access to programming and recreation. Although lengthy pre-trial confinement under harsh conditions may in some cases support a lower sentence, in this case a reduction was not

4

warranted. Defendant provided no specifics on the nature of his conditions or the hardships they imposed. Instead, he simply noted that jails lack the resources of a prison. It appeared that he had been housed in several facilities over the past year. Further, the fact that this case took a year to resolve was due largely to defendant. Defendant moved to adjourn the originally scheduled trial date, and the matter was delayed further when the defense requested a competency evaluation. Upon completion of that evaluation, I promptly set the case for trial again, but that date was moved due to defendant's complaints about his lawyer. Once those issues were resolved, defendant decided to plead guilty, a few days before the new trial date. Under all of these circumstances, I did not find it appropriate to lower the sentence on this ground.

Second, defendant cited his health concerns. He noted that under the guidelines a court may depart on this basis if the defendant's medical problems are extraordinary. See U.S.S.G. § 5H1.4. Post-Booker, I have greater freedom to consider factors that were disfavored under the guidelines, such as the defendant's health conditions. See United States v. Gammicchia, No. 06-3325, 2007 U.S. App. LEXIS 18840, at *5 (7th Cir. Aug. 9, 2007). However, defendant presented no evidence substantiating the seriousness of his conditions or demonstrating the prison system's inability to deal with them. The PSR contained no such evidence. The competency evaluation provided some support for the notion that prison may be harder for defendant than other inmates, given the intersection of his physical and mental problems. It did appear that while in custody defendant reported an onset of physical concerns and ailments which, he claimed, were not properly addressed. The competency evaluator did not see evidence of a somatoform disorder, that is, physical complaints of psychological origin, or any delusional disorder leading defendant to believe he was afflicted with medical conditions that

5

Case 2:06-cr-00205-LA   Filed 08/27/07   Page 5 of 7   Document 152

did not exist. Rather, defendant appeared to have genuine medical problems that were relatively benign, but which he believed warranted greater treatment than was being offered. Given this evidence, I could not conclude that defendant's physical problems and his psychological responses thereto warranted significant sentencing consideration, but I did accept that prison for him would be somewhat harder than for a person who did not share his outlook.

Finally, defendant asked for a lower sentence based on the sentences imposed on his co-conspirators Adejoke Davies-Isom, who received 54 months, and Jeffrey Anderson, who received 18 months. Defendant argued that it would be particularly unfair to sentence him to a longer term than Davies-Isom, who supplied the conspiracy with heroin. The Seventh Circuit has expressed skepticism about such comparisons, noting that § 3553(a)(6) is concerned with unjustified differences across judges (or districts) rather than among defendants to a single case. United States v. Davila-Rodriguez, 468 F.3d 1012, 1014 (7th Cir. 2006), cert. denied, 127 S. Ct. 1861 (2007). In any event, there was no unwarranted disparity in this case because the differences were based on valid factors, such as Davies-Isom's lack of any prior record and qualification for the safety valve, and Anderson's responsibility for a much lower drug weight. Therefore, there was no basis for reducing defendant's sentence to bring it in line with their's.

As noted, defendant asked for a five year sentence, the statutory minimum, but such a term was insufficient to satisfy the purposes of sentencing, particularly the need for just punishment, given the seriousness of the crime, and deterrence and protection of the public, given defendant's prior record. I also noted that pursuant to his plea agreement, the government agreed to dismiss the information it had previously filed under 21 U.S.C. § 851 based on defendant's prior felony drug conviction. Absent that dismissal, defendant's

6

mandatory minimum would have been ten years rather than five.

### III. CONCLUSION

Under all of the circumstances, I found a sentence of 78 months sufficient but not greater than necessary. In imposing this sentence, I took into account the seriousness of the crime and defendant's record, as well as defendant's health issues and the positives in defendant's character noted by his mother and girlfriend. Because this sentence varied just slightly from the guidelines and was based on the particular facts of the case, it did not create any unwarranted disparity.

Therefore, I committed defendant to the custody of the Bureau of Prisons for 78 months. Upon release, I ordered him to serve a four year supervised release term, the conditions of which appear in the judgment.

Dated at Milwaukee, Wisconsin, this 26th day of August, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge